**BARBER LUMBER & MFG. CO. v. REEVES.**

No. 2092.

Court of Civil Appeals of Texas. Beaumont.
June 26, 1931.

Rehearing Denied July 1, 1931.

Ewill Strong, Jr., and Orgain, Carroll & Bell, all of Beaumont, for appellant.

D. E. O'Fiel, of Beaumont, and James F. Parker, of Kountze, for appellee.

WALKER, J.

This was a suit by appellee against appellant for damages for breach of a timber-cutting contract. Appellee pleaded his contract, describing the timber to be cut, giving his rate of compensation and the cost to him of cutting, hauling and loading the timber on cars. Under his pleading it was contemplated that he would cut and load on cars 250,000 feet of hardwood timber and that appellant breached the contract after 125,000 feet had been cut and delivered. Under his pleadings he was to receive $12 per thousand for cutting and loading the timber on cars, at a cost to him of $6.50 per thousand, leaving him a net profit of $5.50 per thousand. He pleaded that the contract was oral and the work was to begin "at once" with reference to the date of the contract, and "to continue without cessation until the entire tract of hardwood timber, as aforesaid, was cut, removed, hauled and loaded upon the cars." The breach of the contract was specially pleaded as follows: "On or about the 1st day of May, 1929, the said defendant caused the plaintiff to temporarily stop operations under said contract and assured plaintiff that same would be resumed in a few days and that the plaintiff at the instance and request of defendant held his outfit together until on or about the 8th day of July, A. D., 1929, and some few days after July 8th the defendant, being and becoming liable for the expenses incurred, by reason of holding the outfit together as aforesaid and thereafter the defendant refused plaintiff permission to continue the cutting without any just or reasonable cause therefor and thereafter informed this plaintiff that the defendant would not pay for any more logs loaded on the cars at Frecenious, Texas, under the terms of the oral contract aforesaid."

Among other defenses, appellant answered by general denial. The trial was to the court without a jury, with judgment in appellee's favor for the loss of profits on hauling and delivering 125,000 feet of timber at $5.50 per thousand. In support of the judgment the trial court filed conclusions of fact and law sustaining all the allegations of the petition, that is, that the oral contract was made at the time appellee alleged; that un-

der its terms appellee was to cut and load on cars 250,000 feet of hardwood timber at $12 per thousand; that he cut and delivered 125,000 feet, for which he was paid; that appellant breached the contract after appellee had delivered the 125,000 feet, thereby depriving appellee of the right to deliver the remaining 125,000 feet; that his profit on the work would have been $5.50 per thousand, making his damages $687.50, for which judgment was entered. In support of his conclusions that appellant breached the contract, the trial court found the following facts:

"8. On or about July 10th, 1929, the defendant notified plaintiff that the defendant would not pay for any more logs from said timber that plaintiff might load on the cars at Frecenious, Texas, and forbade plaintiff to do anything further under their contract."

"11. The terms of the contract entered into by the parties on February 23, 1929, described in paragraph 1 of the foregoing Findings of fact were valid and binding. The defendant wrongfully prevented the plaintiff from completing the work he agreed to perform under said contract, said act on the part of defendant being of date July 10th, 1929, breaching the contract."

Against these two conclusions of fact appellant advances the assignment that they are wholly without support in the evidence. The following is all the testimony on the issue of breach of the contract:

Appellee testified:

"And when we got through cutting the magnolia he told me not to cut any more, that he would have to be around a little bit before he could handle this oak. And so I waited out there probably a month and a half, I reckon, expecting every few days to start to work, next week hauling, and next week never did come.

" * * * And probably about six weeks after that I wrote him a letter, and I received no answer; and probably a month later I wrote him and asked him if he would answer that letter. I do not remember the dates of those letters. He did not answer that one and told me that he could not handle it at all then.

" * * * I do not remember just how long it was from the time I first stopped work at the instance of Mr. Barber until he told me he could not use any more oak at all, but it was when we got through cutting the magnolia: probably fifty days, maybe a little more. I judge that I kept my teams there idle about six weeks. I figured on starting the next week all the time.

" * * * I got a reply to that letter. I did not get a reply to the first one. I got a reply to the second letter. The reply to the second letter was in the form of a letter. I do not have that letter in my possession.

I made a search for it. It was a very short letter. I do not know where it is. I could not find it. I have tried to find it.

" * * * He (appellant) said in that letter that he could not handle the timber at all now; that he would let me handle it as soon as he could use it; that he could not use it at all then. I then moved away from there pretty soon."

R. S. Barber, on direct examination, testified: "I never did tell Mr. Reeves to cut any more than the magnolia. I told him not to cut any more until I gave him the orders."

On this issue appellee says, in his brief: "The evidence upon the question did not state in words that the appellant forbade the appellee from doing anything further under the contract, or that he would not pay for any more logs, but the testimony was that the appellant notified the appellee that he could not handle the logs and to cease operations, which was equivalent to saying that he was not going to pay for the logs even though the exact words were not used."

The quoted testimony was sufficient to raise the issue that appellant refused appellee permission "to continue, without cessation," the work to completion, and under all the facts the issue was raised that this act on the part of appellant constituted a breach of the contract. But that was not the issue pleaded by appellee. His pleading was that appellant breached the contract by "refusing plaintiff permission to continue the cutting without any just or reasonable cause therefor, and thereafter informed this plaintiff that the defendant would not pay for any more logs loaded on cars." By the eighth and eleventh conclusions of fact the allegation of the petition just quoted was fully sustained. But the proof is directly against this allegation and against the eighth and eleventh conclusions of fact. Thus Mr. Barber testified that he told the plaintiff "not to cut any more until he gave him the orders." Appellee testified that appellant wrote him that he "would let me handle it as soon as he could use it; that he could not use it at all then." From this testimony it is clear that appellant did not notify appellee that he "would not pay for any more logs" and did not forbid "plaintiff to do anything further under their contract." The full import of the testimony was merely that appellant refused appellee the right to "continue without cessation" the work to completion. It follows that the eighth and eleventh conclusions of fact are without support in the evidence. Having specially pleaded the manner of the breach of the contract, appellee is confined to the issues made by his pleadings, and we cannot affirm the judgment upon a theory of breach of the contract not raised by the pleadings.

Appellant has an additional proposition that

250

the evidence is insufficient to sustain the finding that appellee would have made a profit of $5.50 per thousand on hauling and loading this timber. Because of the reversal of the judgment of the lower court on the grounds just discussed, we pretermit a discussing of this assignment. Upon another trial the point made by appellant against the judgment on this ground may be obviated.

Reversed and remanded.